# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2140

_____

Debra Vester,                       *

                              *

        Appellant,          *

                              *     Appeal from the United States

    v.                     *     District Court for the

                              *     Eastern District of Arkansas.

Jo Anne B. Barnhart, Commissioner,  *

Social Security Administration,     *

                              *

        Appellee.          *

_____

Submitted: January 10, 2005
Filed: July 27, 2005

_____

Before SMITH, HEANEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Debra Vester applied for supplemental social security income under Title XVI of the Social Security Act on September 14, 1992, claiming that she was unable to work due to her physical and mental impairments. After an initial denial, a hearing was held in 1993, and an adverse decision issued in 1995. In 1996, the Appeals Council of the Social Security Administration denied her request for review, but when Vester sought judicial review, the district court remanded the case for further consideration. In 1997, a second administrative hearing was held, and an Administrative Law Judge ("ALJ") once again denied her claim. In 1999, a second

district court decision remanded her claim for further consideration. A third hearing was held on June 27, 2001, and a third ALJ decision denying her application was issued on October 25, 2001. On February 6, 2002, the Appeals Council declined to review the ALJ's decision, and on March 17, 2004, the district court[1] affirmed the Commissioner's denial of benefits. Vester now appeals, and we affirm.

I.

An ALJ pursues a familiar five-step inquiry in determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920. In order to qualify for benefits, the claimant must demonstrate that she suffers from a severe impairment, lasting for at least twelve continuous months, and that the impairment prevents her from performing substantial gainful work. If such an impairment exists, the ALJ must determine whether the claimant has demonstrated that she is unable to perform either her past relevant work, or any other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.945.

In the most recent decision denying Vester's application for benefits, the ALJ followed this five-step process and determined that Vester did suffer from a combination of impairments that was "severe" for purposes of the Social Security Act. Although he found that Vester's claims regarding her limitations were not totally credible, the ALJ concluded that when all of her impairments were considered, her non-exertional limitations significantly compromised her range of work.

However, in Vester's case, the ALJ's duty was complicated by her long history of drug and alcohol abuse. Under 1996 amendments to the Social Security Act, if alcohol or drug abuse is a "contributing factor material to the Commissioner's

---

[1]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, presiding by consent of the parties.

determination" of a disability, the claimant is not entitled to benefits. 42 U.S.C. § 423(d)(2)(C). In the determination whether the substance abuse is "material," the claimant has the burden of demonstrating that she would still be disabled if she were to stop using drugs or alcohol. 20 C.F.R. § 416.935(b)(1); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000).

In considering Vester's claimed disability, the ALJ determined that, absent alcohol abuse, she had the ability to perform light work, except that she was unable to stand or walk for more than four hours out of an eight-hour work period or more than one hour without interruption, or to sit for more than six hours out of an eight-hour period or two hours without interruption. The ALJ also found that, outside of her problems with alcohol, she had a limited but satisfactory ability to deal with the public, use judgment, maintain attention and concentration, relate predictably, behave in an emotionally stable manner, and understand, remember, and carry out detailed job instructions, but a poor ability to understand, remember, and carry out complex job instructions. Based on these findings, the ALJ concluded that Vester was not disabled within the meaning of the Social Security Act.

II.

On appeal, Vester does not take issue with the ALJ's findings with respect to her physical ailments, but argues only that the ALJ erred in determining that alcohol was a contributing factor material to her disability. We review the district court's decision to uphold the denial of social security benefits *de novo*, and consider, as the district court did, whether the ALJ's decision is supported by substantial evidence on the record as a whole. *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). "Substantial evidence" is such evidence that a reasonable person would find adequate to support the ALJ's determination. *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004). In evaluating whether the ALJ's decision meets this standard, we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence, and we

defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Vester argues that her alcoholism is not a contributing factor material to her claimed disability. As Vester pointed out to the ALJ and in her argument before this court, there is evidence to support her assertion that she has suffered, at times, from mental illness. As early as 1991, she began seeing Penny Wenczel, a Licensed Certified Social Worker, for therapy to treat recurrent moderate depression. (R. at 173). In 1993, B. Eliot Cole, M.D., diagnosed Vester with bipolar disorder and major depression, along with a probable personality disorder, placing her "Global Assessment of Functioning" level at 55 to 60 on a scale of 0 to 100. (R. 181.) The Commissioner's doctor, Gene W. Reid, M.D., examined Vester on February 19, 1997, and diagnosed her with bipolar disorder (although in remission), alcohol dependence, and personality disorder. (R. 480.) In 1998, Terry Sutterfield, M.D., treated Vester and echoed the diagnoses of depression and probable personality disorder. (R. 712.) In addition, at several points between 1992 and 1995, Vester sought therapy from Joan Shepard, a Licensed Professional Counselor.

At the same time, much of Vester's medical history suggests that alcohol has been a substantial barrier to her normal functioning. After showing up intoxicated for an appointment in 1991, she went through a period of sobriety during which she was doing "quite well" and had no need for medication. (R. at 171, 165). The sobriety was short-lived, however; notes from her therapy with Joan Shepard are replete with references to Vester's use of alcohol. (R. at 229, 233, 298). The same doctors who diagnosed her with depression also noted her alcohol dependence (R. at 181, 481, 712), and at her 2001 hearing, Vester testified that she had only been sober "periodically." (R. at 584). While Vester testified that her last ten years included a

streak of sobriety as long as three years (R. at 584), she also sustained two convictions for driving while intoxicated during that period. (R. at 409-10).[2]

In urging that we reverse the Commissioner's findings, Vester points to elements of the record that she says support her claim that she is disabled independent of her alcoholism. A 1998 letter from Joan Shepard, the counselor who treated Vester, asserted that "alcoholism has been Mrs. Vester's way of self medicating her underlying problems" and that her need for benefits "is based on the mental health issues." (R. at 687). The ALJ did not credit this letter. Noting that Shepard has no medical degree and did not qualify as a medical source under the regulations, he nonetheless considered the opinion and Shepard's clinical notes, but found the notes to be unsupportive of the letter's content. As the ALJ noted, Shepard had seen Vester only sporadically and never for more than a year continuously. Moreover, notes from another therapist at Shepard's clinic indicated that Vester "need[ed] to be in treatment for alcohol depend[ence] before any other treatment," (R. at 207), a conclusion that is consistent with the ALJ's determination that Vester's alcoholism was a material factor contributing to her disability.

---

[2]At the administrative hearing, the ALJ asked the medical expert, Dr. Patricia Griffen, whether, if Vester "stuck with strict sobriety and took the medications as she is directed, would you expect her condition to substantially improve?" She answered:

> I don't know if I can answer that in terms of whether or not it would substantially improve. However, in cases where individuals have been able to remain sobriety, abstinent from alcohol, follows through in treatment for the depression, there certainly has been a history of improvement with those individuals. And to what extent that would be substantial, I don't know. But certainly the alcohol worsens the depression and interferes with the individual level of functioning.

(R. 600).

Vester counters that Shepard's 1998 letter was co-signed by a psychiatrist, C.G. Pearce, M.D., and should therefore be credited as a medical opinion. Other than Dr. Pearce's signature on the letter, however, Vester points to no medical records or other evidence indicating his involvement in Vester's treatment, and we find no reason to require that the ALJ credit the letter as the opinion of a "treating" psychiatrist. In addition, some of the ALJ's reasons for discrediting Shepard – especially the irregularity of her visits with Vester – also extend to Dr. Pearce, who was employed by the same clinic as Shepard and would not have seen Vester any more frequently than Shepard. We believe that the ALJ properly considered the letter and gave good and adequate reasons for his decision not to give the opinion substantial weight.

Vester's general attacks on the ALJ's findings that she was functioning normally while sober also fail. While it is true that "[d]etermining whether a claimant would still be disabled if he or she stopped drinking is, of course, simpler if the claimant actually has stopped," *Pettit*, 218 F.3d at 903, in this case Vester had been sober only five months at the time of her 2001 hearing before the ALJ, and she admitted that her sobriety was "periodic[]." (R. 584.) Nonetheless, there is some evidence in the record of her improved condition during other periods of sobriety. At many such times, notes from Shepard and others indicate that Vester is "doing well" (R. at 221) and "feeling good" (R. at 209). During one period of sobriety, Vester was able to attend classes and complete a 90-day community service assignment.[3] In Shepard's notes regarding that assignment, she remarked on the

---

[3]Vester argues that this history supports her claim that she is unable to function continuously even while sober, because the assignment took her "five months" to complete, rather than the assigned 90 days, and because she was "written up" for being argumentative. However, the only evidence that Vester points to in support of these problems is her own testimony. (R. at 399-400). Her assertion that it took her five months to complete the assignment is in conflict with other evidence in the record, including Shepard's notes indicating that Vester was sentenced to community service on January 17, 1997, and that she had definitely completed the service by the time of her meeting with a judge on May 1, 1997. (R. at 496, 510).

"respect that [Vester] has gained" at Marshall Nursing Home, and wrote that Vester had been volunteering five days and attending classes two days each week. (R. at 503-04). In fact, Vester's performance in the community service program was so promising that her supervisor sponsored her for a Certified Nurse Assistant class, which Vester completed. (R. 503, 508, 510).

Notwithstanding the above-described evidence upon which the ALJ rested his finding that Vester would be not disabled absent her alcoholism, Vester argues that there must be additional "medical evidence" to support the ALJ's findings with respect to Vester's residual functional capacity. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). She contends that the opinion of Dr. Reid, the psychiatrist, is insufficient to support the ALJ's conclusion, because the doctor merely included Vester's alcoholism in his evaluation "without considering what limitations would remain in the absence of the alcoholism." (Appellant's Reply Br. at 6).

We have some doubt whether Vester's ability to work in the absence of alcoholism is a "medical question" comparable to the traditional determination of residual functional capacity. Put simply, if an ALJ is presented with evidence that a claimant has demonstrated the ability to work during periods of sobriety, it seems within the ken of the ALJ to make a factual finding that the claimant is able to work when she is not abusing alcohol. This sort of judgment, based largely on historical facts, strikes us as different in kind from that required when a claimant presents a set of medical problems, and the ALJ must make a predictive judgment as to the claimant's ability to work in light of a given medical condition.

Assuming for the sake of argument, however, that the ALJ was required to develop some medical evidence, we believe the record is adequate to support the ALJ's decision. Although Dr. Reid did not phrase an opinion precisely in terms of the statutory framework of the 1996 amendments to the Social Security Act, we believe that his evaluation does include "some supporting evidence from a

-7-

professional," *Lauer*, 245 F.3d at 704, that bolsters the ALJ's conclusion. When asked to "describe any limitations" and to "include the medical/clinical findings" that supported his assessments that Vester was limited in certain functions, Dr. Reid observed that she was a "<u>severe</u> alcoholic," that she has "some difficulty with thought organization – probably from years of alcohol abuse," that she suffered from "long term alcoholism with very little sobriety," and that her alcoholism dependence was only "In Partial Remission." (R. at 480-82). He opined that her condition "[m]ay improve with more time sober and taking mood stabilizing medication." (R. at 480). While Dr. Reid noted elsewhere that Vester "also has Bipolar Disorder," (R. at 482), he concluded that this condition was "In Remission." (R. at 480).

We agree with the district court that "[a]lthough Dr. Reid also diagnosed bipolar disorder, it is clear that he believed [Vester's] main problem leading to her functional limitation was her long-term alcoholism." (Mem. and Order, Mar. 17, 2004, at 4). We believe, therefore, that it was reasonable for the ALJ to conclude that Dr. Reid's evaluation provided some medical evidence in support of a conclusion that Vester's alcoholism was a material factor contributing to her disability, and that the record was adequately developed on this point.

After considering all of the evidence under the substantial evidence standard, we are satisfied that the ALJ case untangled Ms. Vester's history of alcoholism and mental illness with sufficient clarity and detail to support the finding that she is not disabled apart from her alcoholism. In contrast to other cases involving alcohol abuse that have been remanded to the ALJ for reconsideration, *e.g., Brueggemann v. Barnhart*, 348 F.3d 689, 695-96 (8th Cir. 2003); *Pettit*, 218 F.3d at 903-04, the ALJ followed the analytical framework prescribed by the regulations, made detailed factual findings about Vester's depression and alcoholism, and supported his findings with references to the record. We conclude that a reasonable person considering the record as a whole could reach the conclusion adopted by the ALJ.

*     *     *

For the reasons detailed above, we conclude that substantial evidence supports the Commissioner's finding that Vester is not disabled under the Social Security Act when she is not abusing drugs or alcohol. We therefore affirm the judgment of the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. I agree with the majority that the sole issue in this case is whether Debra Vester would still be disabled if she were to stop using alcohol. I part from the majority because, after reviewing the record, I find no medical evidence, as opposed to mere speculation, that Vester would be able to work if she stopped using alcohol. I would remand with directions to award Vester supplemental social security income under Title XVI of the Social Security Act from September 14, 1992.

Debra Vester is 55 years old with a long history of alcohol abuse, drug abuse, depression, and bipolar disorder. She has been married four times and has two children. She initially filed her claim for disability benefits in 1992 and was denied benefits in 1995. The district court reviewing the case remanded for further consideration, and in 1997, her claim was again denied. In 1999, a second district court remanded Vester's claim, concluding that Vester suffered from mental impairments independent from her alcohol abuse, and instructing the ALJ to consider whether Vester was disabled in light of those impairments. (R. at 673.) On October 26, 2001, an ALJ concluded that Vester's medical condition in the absence of substance abuse, while limiting, did not result in functional limitations so severe that she was unable to work. This decision was affirmed by the district court on March 17, 2004.

A claimant is not entitled to benefits if drug or alcohol abuse is a "contributing material factor" to the disability, 42 U.S.C. § 423(d)(2)(C), but may show that alcohol abuse is not a material factor to her disability if she would still be disabled if she stopped using alcohol, 20 C.F.R. § 416.935(b)(1).

Several principles are relevant to this determination. First, while an impairment which would go away if the claimant discontinued her consumption of alcohol may not be considered, a permanent impairment, caused by *past* alcohol abuse, such as liver disease or cognitive losses, may be considered. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000) ("The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause."). Second, the ALJ's conclusion that alcohol abuse is material to a claimant's disability, and that she would not be disabled in the absence of alcohol abuse, must be supported by some medical evidence. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (holding that some medical evidence should support an ALJ's finding of residual functional capacity).

The majority suggests that this case does not present the "medical question" of residual functional capacity because the ALJ's judgment was based on a common-sense assessment of Vester's successful community service experience from which the ALJ could extrapolate Vester's ability to work. I disagree. The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and remissions are of "uncertain duration and marked by the impending possibility of relapse." Id. Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms; they may be more impaired than their symptoms indicate. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); 20

-10-

C.F.R. Pt. 404, Subpt. P., App.1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because residual functional capacity is based on the claimant's "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc). If an assessment of disability based on mental illness requires some supporting evidence from a medical professional, it defies logic to conclude that the even more difficult task of determining a claimant's *hypothetical* abilities in the absence of alcohol or substance abuse should be left to the ALJ.

There is no doubt that Vester suffers from severe mental impairments. Vester has been diagnosed with depression and bipolar disorders that are at times controlled with medication. The question remanded to the ALJ was whether Vester would still be disabled if she stopped using alcohol. Two medical examinations, with Dr. Harris in October of 1996 and with Dr. Reid in February of 1997, were conducted during periods when Vester had stopped using alcohol for several months. (R. at 469-74 (Dr. Harris) and 475-82 (Dr. Reid)). Both examiners found that Vester continued to suffer from depression and bipolar disorder and had a limited ability to demonstrate the stability, reliability, and social skills needed for employment. In my view, the ALJ was required to accept the diagnosis of these two experts rather than speculating that Vester's mental stability would further improve if she continued to abstain from using alcohol. See Pettit, 218 F.3d at 903-04.

The majority suggests that the ALJ's conclusion is sufficiently supported by Dr. Reid's 1997 evaluation of Vester. This report, however, fails entirely to distinguish between permanent impairments or deficits caused by Vester's long-term alcohol abuse, and conditions that would in fact improve with continued sobriety. Dr. Reid observed that Vester's "difficulty with thought organization" was likely caused by long-term alcohol abuse, but does not indicate whether this is a permanent or

-11-

temporary condition. (R. at 482.) At the time of Dr. Reid's evaluation, Vester had been sober for more than four months. Dr. Reid notes that Vester might show further improvement with continued sobriety, but provides no detail regarding the degree to which Vester would remain functionally limited. This evaluation provides little support for the ALJ's conclusion that Vester would not be disabled if she discontinued her use of alcohol. It does establish, unequivocally, that Vester *was* disabled at the time of the exam, when she had not been drinking for months.

The difficulty in evaluating this case stems in part from the fact that the medical reports submitted simply do not address whether Vester would remain disabled if she stopped using alcohol. The ALJ actually posed this question directly to Dr. Griffen at the most recent hearing, and she stated that she could not say with any certainty whether, or how much, Vester's condition would improve. After hearing this testimony and reviewing the reports of the examining psychologists (none of whom offered any prediction regarding the degree to which Vester's condition might improve with continued sobriety), the ALJ confidently concluded that Vester would not be disabled if she stopped using alcohol.

Instead of focusing on the medical evidence in the record, the ALJ relied on evidence of Vester's community service assignments to conclude that she was able to work when not using alcohol. Vester's successful completion of her short-term community service assignment, while she was receiving substantial support and attention from her caseworker, does not constitute substantial evidence that Vester is not disabled. See Andler, 100 F.3d at 1393 (holding that a short period of actual work under special conditions is not inconsistent with total disability due to mental illness). The occasional comments that Vester was "doing well" during a sober period also fail to provide sufficient support for the ALJ's decision. Hutsell, 259 F.3d at 712 (concluding that a report that a patient is "doing well" in the context of a treatment program has "no necessary relation to a claimant's ability to work").

The ALJ's conclusion is unsupported by medical evidence, and I am unwilling to concur in the majority's suggestion that an ALJ is free to speculate regarding the complex interaction of mental illness and substance abuse. I would therefore remand with directions to award Vester supplemental social security income under Title XVI of the Social Security Act from September 14, 1992.

_____